IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 08-cv-02792-MSK-KMT

FAIRFIELD DEVELOPMENT, INC., d/b/a Fairfield Development LP,

    Plaintiff, and

AXIS SURPLUS INSURANCE CO.,

    Intervenor - Plaintiff,

v.

J.D.I. CONTRACTOR & SUPPLY, INC.,

    Defendant.

---

**OPINION AND ORDER GRANTING, IN PART, MOTIONS FOR
SUMMARY JUDGMENT**

---

**THIS MATTER** comes before the Court pursuant to Plaintiff Fairfield Development, Inc.'s ("Fairfield") Motion for Partial Summary Judgment **(# 58**, as supplemented **# 64)**, Defendant J.D.I Contractor & Supply, Inc.'s ("JDI") response **(# 67)**, and Fairfield's reply **(# 68)**; and JDI's Motion for Partial Summary Judgment **(# 73)**, Fairfield's response **(# 74)**, and JDI's reply **(# 86)**.

## FACTS

According to the Amended Complaint **(# 60)**, Fairfield retained JDI to perform drywall construction services on a building project. On January 13, 2008, a fire broke out in the project, causing significant damage. Investigation revealed that JDI was responsible for the fire, having left unattended propane heaters too close to combustible material. Plaintiff Axis Surplus Ins. Co.

1

("Axis"), Fairfield's insurer, has paid over certain amounts to an on behalf of Fairfield as a result of JDI's conduct. The Amended Complaint asserts three causes of action on behalf of both Plaintiffs: (i) that JDI was negligent in various respects, causing damage to Fairfield and Axis; (ii) negligent supervision,[1] and (iii) breach of contract, in that JDI contracted to comply with "all laws [and] safety and health regulations," and to perform its work "in a good, first-class and workmanlike manner, but its actions involving the heaters constituted a violation of unspecified safety rules, laws, and standards and constituted unworkmanlike acts.

Prior to filing the Amended Complaint, Fairfield moved for partial summary judgment **(#58)**, purportedly seeking judgment on a defense asserted by JDI in response to Axis' Complaint in Intervention **(# 62)**.[2] Specifically, Fairfield contends that it is entitled to summary

---

[1]The claims appears to be duplicative of the generic negligence claim, which also alleges a failure to supervise or monitor the drywall work. *Docket* # 60, ¶ 16(h), (j).

[2]The parties have been casual with observance of litigation formalities in this case, leading to a confused procedural posture. Fairfield moved to amend **(# 53)** the original Complaint in this action to add Axis as a real party in interest. Three days later, while Fairfield's motion to amend was still pending, Axis (through the same counsel as Fairfield) moved to intervene **(# 55)**. Both motions were granted on the same day **(# 59, 61)**, with the result being Fairfield's Amended Complaint **(# 60)** naming Axis as a party Plaintiff, and Axis' Complaint In Intervention **(#62)** asserting identical claims. JDI answered **(# 63, 66)** Fairfield's Amended Complaint and Axis' Complaint in Intervention separately. Among the affirmative defenses asserted by JDI to Axis' Complaint in Intervention (but not to Fairfield's Amended Complaint) was invocation of the anti-subrogation rule.
Prior to JDI's filing of Answers, Fairfield filed the instant summary judgment motion, seeking judgment on JDI's affirmative defense of the anti-subrogation rule, even though JDI had yet to formally assert that defense in a pleading. More importantly, Fairfield is the only movant on the summary judgment motion, but the anti-subrogation defense is asserted by JDI only against Axis' claims. Because the anti-subrogation defense is not – and indeed, could not – be asserted against Fairfield, the Court could deny Fairfield's motion as moot. However, because the motion is fully briefed on the merits, because the same counsel represent both Fairfield and Axis, and in the interests of judicial economy, the Court will deem Fairfield's motion to be joined by Axis, and the Court will proceed to adjudicate the motion as if it were made only by Axis. (For purposes of harmonization with the Docket, the Court will continue to refer to it as

2

judgment on JDI's defense that Axis' claim for subrogation are barred by the anti-subrogation rule. JDI responds that, under the terms of Axis' policy, it is a covered entity, thus preventing Axis from seeking subrogation against it.

Separately, JDI moves for partial summary judgment **(# 73)** with regard to its affirmative defense of comparative negligence against Fairfield. Specifically, JDI contends that Fairfield was negligent *per se*, because it failed to comply with Arapahoe County fire codes and indeed, was cited by Arapahoe County for fire code violations relating to the heaters. In response, Fairfield confesses some confusion as to precisely what negligence *per se* claim or defense is being alleged, but, in any event, argues that the reasons for the citation – that the propane heaters were too close to the ceiling – was not the cause of the fire. Instead, Fairfield points out that the fire inspectors concluded that the fire was caused by the heaters being moved too close to flammable material by JDI.

## ANALYSIS

**A. Standard of review**

Rule 56 of the Federal Rules of Civil Procedure facilitates the entry of a judgment only if no trial is necessary. *See White v. York Intern. Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Summary adjudication is authorized when there is no genuine dispute as to any material fact and

---

Fairfield's motion, however.)
    Moreover, because the parties appear to recognize no procedural difference between Axis' status as a party Plaintiff and as an Intervenor-Plaintiff, the Court will clarify the matter by deeming Axis to be a party Plaintiff only. Hereafter, the operative pleading shall be the Amended Complaint at Docket # 60, with the claims therein asserted by both Fairfield and Axis as party Plaintiffs. All further proceedings in this case shall bear the caption used on that document. The Court will deem all affirmative defenses asserted in either of JDI's Answers to be asserted in response to the Fairfield/Axis Amended Complaint.

a party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Substantive law governs what facts are material and what issues must be determined. It also specifies the elements that must be proved for a given claim or defense, sets the standard of proof and identifies the party with the burden of proof. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Kaiser-Francis Oil Co. v. Producer's Gas Co.*, 870 F.2d 563, 565 (10th Cir. 1989). A factual dispute is "genuine" and summary judgment is precluded if the evidence presented in support of and opposition to the motion is so contradictory that, if presented at trial, a judgment could enter for either party. *See Anderson*, 477 U.S. at 248. When considering a summary judgment motion, a court views all evidence in the light most favorable to the non-moving party, thereby favoring the right to a trial. *See Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002).

If the movant has the burden of proof on a claim or defense, the movant must establish every element of its claim or defense by sufficient, competent evidence. *See* Fed. R. Civ. P. 56(e). Once the moving party has met its burden, to avoid summary judgment the responding party must present sufficient, competent, contradictory evidence to establish a genuine factual dispute. *See Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991); *Perry v. Woodward*, 199 F.3d 1126, 1131 (10th Cir. 1999). If there is a genuine dispute as to a material fact, a trial is required. If there is no genuine dispute as to any material fact, no trial is required. The court then applies the law to the undisputed facts and enters judgment.

If the moving party does not have the burden of proof at trial, it must point to an absence of sufficient evidence to establish the claim or defense that the non-movant is obligated to prove. If the respondent comes forward with sufficient competent evidence to establish a *prima facie*

claim or defense, a trial is required. If the respondent fails to produce sufficient competent evidence to establish its claim or defense, the claim or defense must be dismissed as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

   **B. Fairfield's motion**

   Fairfield seeks summary judgment on JDI's affirmative defense that the anti-subrogation rule bars Axis' claims.

   Here, JDI offers two major arguments for its position that it has rights as an insured under Fairfield's policy: (i) the definition of "insured" includes Fairfield and any "associated or affiliated company," a definition JDI claims to fall within by virtue of its subcontract; and (ii) several terms in the policy indicate that coverage extends to property of both Fairfield and its vendors or subcontractors.[3] With regard to the second argument, JDI specifically points to Article 7, Section A, which states that coverage extends to "The interest of the insured in all real and personal property . . . owned or used by the insured," as well as to "The interest of the insured in the real and personal property of others in the insured's care . . ." and to "Contractors' and vendors' interests in property covered to the extent of the insured's liability imposed by law or assumed by contract." Article 48 also defines the scope of coverage as it relates to the equipment of contractors on the site. That provision states that the policy covers "your contractors' equipment . . . and similar property of others that is in your care, custody, or control and for which you are responsible."

   Under Colorado law, the interpretation of an insurance policy is a matter of law for the

---

[3]provisions that state that the policy covers both "contractors' and vendors' interests in property," and that covered property includes "[Fairfield's] property or the property of others for which [it] is responsible."

Court. *Cyprus Amax Minerals Co. v. Lexington Ins. Co.*, 74 P.3d 294, 299 (Colo. 2003). The Court interprets the language of the policy according to the intent of the parties. *Chacon v. American Family Mut. Ins. Co.*, 788 P.2d 748, 750 (Colo.1990). That intent is best manifested by the plain language used in the policy. *Id.* If there is an ambiguity in the language that cannot be resolved by application of standard tools of contractual interpretation, a court can resolve that ambiguity against the drafter and in favor of coverage. *Cyprus*, 74 P.3d at 299. The Court is required to read the policy as a whole, not to attempt to interpret a particular word or phrase in isolation. *Id.*

Ordinarily, an insurer has a subrogation right to recover the amounts it paid as benefits to its insured from the third-party whose conduct resulted in the injury to the insured. The antisubrogation rule provides that an insurer <u>cannot</u> assert a subrogation claim if the third-party is also an insured covered under the policy for the risk in question. *DeHerrera v. American Family Mut. Ins. Co.*, 219 P.3d 346, 351 (Colo. App. 2009). The rule serves two purposes: it prevents an insurer from passing the risk of loss back to the insured in derogation of the purposes of the insurance policy in the first place, and it prevents conflicts of interest that might arise where the insurer would otherwise lack an incentive to provide a vigorous defense to the insured. *Id.*

In order to determine whether the antisubrogation rule applies, the Court need only reach the question of whether, under the plain language of the policy, JDI was an insured.[4] To do so

---

[4] Axis has not contended, and thus, the Court has not considered, whether JDI would be subject to liability even if it were an insured under the policy, pursuant to the "no coverage exception" described in *Continental Divide Ins. co. v. Western Skies Management, Inc.*, 107 P.3d 1145, 1148 (Colo. App. 2004) (the "no coverage exception"). The exception states that where there are two insureds on a policy, and one insured causes damage for which the insurer is liable to the other insured, the insurer may seek subrogation against the insured who caused the damage if the policy's coverage does not cover the insured's actions that caused the damage.

the Court examines the plain language of the policy.

Turning first to JDI's contention that it is an insured because it is "associated or affiliated" with Fairfield, the Court finds the argument without merit. The only apparent relationship between Fairfield and JDI is a contractual one, based on Fairfield subcontracting certain drywall work to JDI. One might, in the loosest possible sense of the term, deem a contractual relationship to be parties to reflect an "association" between the two, but to do so in the context herein would do violence to many aspects of the policy language. For example, the term of coverage extends to Fairfield and its "associated" companies, as well as to "any other party or interest that is <u>required by contract</u> or other agreement to be named." (Emphasis added). If any contractual relationship with Fairfield were sufficient to bring an entity within the term of coverage, language extending coverage to other entities where a contract so required would be redundant; by definition, <u>all</u> entities associated with Fairfield through any contract would be insureds, regardless of whether those contract required Fairfield to make them so. Thus, the plain language of the definition of insured makes it clear that, whatever the definition of "associated or affiliated" may be, it requires something more than a mere contractual agreement with Fairfield. JDI alleges no association beyond that embodied in its subcontract, and thus, it is not an insured on the policy by virtue of the "associated or affiliated" language.

The Court also notes various provisions of the contract – provisions JDI specifically

---

Thus, where a general contractor is injured by the negligent actions of a subcontractor, the general contractor's insurer may seek subrogation against the subcontractor if the general contractor's insurance covers the subcontractor for property damage, but not liability. *Id.* The exception is discussed by an affiant in the affidavit (**# 64**, Ex. A) supporting Fairfield's motion, but not specifically argued by Fairfield itself in the motion.

points to – that discuss the availability of coverage for Fairfield's "contractors' equipment." Again, if the existence of a contract with Fairfield was sufficient to render those contractors as additional insureds under the policy, language discussing coverage related to contractors' equipment would be unnecessary. Thus, reading the policy as a whole, the Court finds that the "associated or affiliated" language defining who is an insured does not extend to JDI simply by virtue of its subcontract with Fairfield.

The Court turns to JDI's remaining argument - that even if it is not a full insured, the coverage language of the policy extends a degree of coverage to JDI as well as Fairfield.[5] The language in question extends coverage to "Contractors' and vendors' interests in property are covered to the extent of the insured's liability" and to "your contractors' equipment . . . and similar property of others that is in your care, custody, or control." This language is unambiguous in that it entitles the insured – Fairfield – to claim coverage for damage to its contractors' equipment <u>where Fairfield is alleged to be liable for the damage</u>. This protects Fairfield from claims brought against it by subcontractors for the loss or damage of their equipment. It does not, as JDI argues, extend coverage to the contractors themselves, such that they may directly make a claim on Axis for coverage under the terms of the policy. The telling language is the statement that damage to contractors' equipment is covered "to the extent of [Fairfield's] liability" and the requirement that the property be "in [Fairfield's] care, custody, or control" when it is damaged. This language makes it clear that coverage for damage to

---

[5]Fairfield does not address this argument in reply, challenging only JDI's argument regarding the "associated or affiliated" language and disputing a factual contention by JDI that Axis made payment to it for certain damaged equipment. (The Court has disregarded JDI's factual contention on this point because JDI did not support this factual averment by citation to supporting evidence. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998).)

contractors' equipment is dependent upon a claim that Fairfield is somehow liable for such damage; it is not susceptible to an interpretation that damage to contractors' equipment is covered regardless of whether Fairfield is at fault. Among other things, this would be inconsistent with the definition of "insured," which the Court has found to exclude subcontractors, as it would treat subcontractors as insureds for some purposes.

Accordingly, the Court finds that JDI has failed to demonstrate that it is an insured under the terms of the policy, such that it can invoke the antisubrogation rule as a defense to Axis' claims. Thus, Fairfield and Axis are entitled to summary judgment dismissing JDI's invocation of the antisubrogation rule as an affirmative defense.

**C. JDI's Motion**

The Court understands JDI to move for summary judgment on its affirmative defense of comparative negligence, seeking a finding that Fairfield was negligent *per se*.[6]

JDI contends that, following investigation of the fire, the South Metro Fire District issued

---

[6]The defense of comparative negligence allows a tortfeasor to escape liability for that portion of the plaintiff's damages that were caused by the plaintiff's own negligence. The factfinder is required to determine the relative degrees of fault for defendant and plaintiff. *Heese v. McClintic*, 176 P.3d 759, 764 (Colo. 2008). Thus, the defense of comparative negligence is particularly ill-suited for summary judgment; a determination by the Court that finds the plaintiff to be negligent in <u>some</u> degree still requires the defendant to put on full evidence of the degree of the plaintiff's negligence at trial so that the jury can determine <u>precisely how</u> negligent the plaintiff was.

Here, however, JDI's comparative negligence claim appears to invoke the doctrine of negligence *per se* – that a third-party's finding that Fairfield breached a relevant statute or regulation conclusively establishes that Fairfield was, at least in part, negligent. Because the determination of negligence *per se* entails several issues of law – whether the statute or regulation at issue was intended to protect against the harm suffered, whether the finding of a violation is sufficient to invoke the doctrine – the Court finds it appropriate to consider those legal aspects in the summary judgment context, rather than deferring those questions until the time of trial.

9

a citation to Fairfield for violating Section 1403.5 of the 2006 International Fire Code, which provides "Clearance to combustibles from temporary heating devices shall be maintained in accordance with the labeled equipment.  When in operation, temporary heating devices shall be fixed in place and protected from damage, dislodgement, or overturning in accordance with the manufacturer's instructions."  The citation directed that Fairfield "Immediately cease use of LPG mushroom type heaters in areas that do not meet manufacturer clearance requirements . . . [the heaters] currently being used require a minimum clearance from combustibles of 3 feet side clearance and 7 foot top clearance."

JDI argues that this citation is sufficient to demonstrate that Fairfield was comparatively negligent with regard to the fire referred to in this action.  The Court addresses this argument only to the extent that it raises legal issues as to whether the citation is sufficient to permit JDI to invoke the affirmative defense[7] of comparative negligence founded on the doctrine of negligence *per se*; the degree of Fairfield's negligence is a matter for resolution by the jury.

In order to properly invoke the doctrine, the party asserting it must show: (i) the violation of a statute; (ii) the statute was intended to protect the public against a particular type of injury; (iii) the plaintiff is a member of the group of persons the statute was intended to protect; and (iv) the violation of the statute was a proximate cause of the plaintiff's injury.  *Silva v. Wilcox*, 223 P.3d 127 (Colo. App. 2009).  Upon such a showing, the statute conclusively establishes the

---

[7]The Court recognizes that Fairfield was confused by the particular procedural posture that JDI's motion arises in, in that Fairfield assumed it was directed at Fairfield's claim of negligence against JDI, not JDI's affirmative defense of comparative negligence.  Although JDI's motion's introductory paragraph is ambiguous as to why the issue of negligence *per se* is being invoked, the first sentence of Section B of JDI's motion indicates that the motion concerns JDI's affirmative defense.  In any event, the Court finds that Fairfield was able to ascertain the contours of JDI's substantive argument and responded accordingly.

standard of care and the violation establishes the party's breach of that duty, leaving the jury only the question of the extent to which that negligence caused the plaintiff's injury. *Id.* Here, there can be little argument that Arapahoe County's fire code was intended to protect the public against conduct that could lead to accidental fires, and that Fairfield, as the owner of a building, is within the class of persons intended to be protected by that fire code.

However, the Court understands Fairfield to dispute that the particular violation of the Fire Code referred to in the citation was a proximate cause of its injury. Fairfield points to deposition testimony by Jeff Atencio, the Fire Marshall that issued the citation. Mr. Atencio testified that the citation was issued because the manufacturer required 7 feet of vertical clearance above the top of the heater and that, because of the design of the building, it was impossible to have such clearance anywhere inside. However, Mr. Atencio denied that "ceiling clearance [had] anything to do with the fire." Rather, he concluded that the fire resulted from the heaters being moved to a position within 6 inches of exposed wood, and that "a member of [JDI's] crew" was the person responsible for moving the heater to that position.[8] Thus, Fairfield has come forward with evidence that would indicate that its violation of the Fire Code was not a proximate cause of the fire that caused its injuries.[9]

In reply, JDI argues that causation is not an essential element of negligence *per se*.

---

[8] Mr. Atencio stated that he issued the citation to Fairfield instead of JDI as a matter of Fire District policy – that violations by subcontractors would result in citation of the general contractor, as the general contractor is the holder of building permits and ultimately responsible for coordinating overall jobsite safety.

[9] Code Section 1403.5 also requires that heaters be "fixed in place," and it is undisputed that the heaters here were not. However, the Court does not understand JDI to argue that the harm sought to be prevented by this rule – the overturning of a heater, leading to a fire – was the cause of the injuries here.

11

*Citing Largo Corp. v. Crespin*, 727 P.2d 1098, 1108 (Colo. 1986) and *Bittle v. Brunetti*, 750 P.2d 49, 55 (Colo. 1988). *Largo* and *Bittle* appear to stand for the proposition that an act can be declared "negligence *per se*" without a showing of proximate cause, but that proximate cause must nevertheless be shown before such negligence can be used to result in an award of damages (or, here, a diminishment of Fairfield's recovery). *Largo*, 727 P.2d at 1107 n. 4 ("A defendant therefore may engage in conduct that is negligent per se, yet escape liability if the plaintiff cannot prove a causal relationship between the negligence and the injuries sustained").

JDI is correct that Colorado precedent, such as *Silva, supra.*, has appeared to blur the distinction between causation as an <u>element</u> of deeming conduct to constitute negligence *per se* and causation as a <u>precondition</u> to relief as a result of conduct that is negligent *per se*, but the distinction is largely a semantic one. Unless JDI can show that the conduct underlying Fairfield's citation was a proximate cause of the fire, whether one deems the citation to constitute negligence *per se* or not is irrelevant. JDI does not disagree that, without proof of causation, it cannot obtain relief on its negligence *per se* defense. Should it fail to present such proof, whether the Court would dismiss that defense for failing to contain the necessary element of proximate cause, or whether the Court would find that Fairfield was indeed negligent *per se* but that such conduct did not proximately cause its injuries is of no moment – in either event, JDI's defense would be properly dismissed.

Without attempting to resolve a purely semantic issue under Colorado law, the Court will simply grant JDI's motion in part: the Court finds that it is undisputed that the citation issued to Fairfield is one for a statute intended to protect the public against a certain kind of injury, and that the injury sustained by Fairfield is the type sought to be prevented by that statute. JDI may

12

treat that as establishing negligence *per se* as a matter of law if it wishes, but the Court makes clear that JDI's defense of comparative negligence, to the extent it is premised on an assertion of negligence *per se*, will nevertheless require additional proof that the cited violation proximately caused Fairfield's injury before that defense will be presented to the jury.

## CONCLUSION

For the foregoing reasons, Fairfield's Motion for Summary Judgment**(# 58**, as supplemented **# 64) is GRANTED**, and JDI's affirmative defense that Axis' claims are barred by the antisubrogation rule is **DISMISSED**. JDI's Motion for Summary Judgment **(# 73)** is **GRANTED IN PART**, insofar as the Court finds that the citation issued to Fairfield was based on a statute intended to protect the public against the risk of fire and that the injury sustained by Fairfield was within the harms sought to be prevented, but that the question of whether the cited conduct was a proximate cause of Fairfield's injury remains in dispute for trial.

As explained above, Axis' status is now adjusted from that of Intervenor-Plaintiff to party Plaintiff, and that Docket # 60, asserted on behalf of both Fairfield and Axis as party Plaintiffs is the operative pleading in this case. All future pleadings in this action shall bear the caption "FAIRFIELD DEVELOPMENT, INC., and AXIS SURPLUS INSURANCE CO.,

Plaintiffs, v. J.D.I. CONTRACTOR & SUPPLY, INC., Defendant." Except as dismissed herein, all affirmative defenses asserted by JDI in Docket # 66 and 66 are deemed asserted in response to Docket # 60.

Dated this 8th day of March, 2010

**BY THE COURT:**

_Marcia S. Krieger_

Marcia S. Krieger
United States District Judge