## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 08-cv-02792-DME-KMT

FAIRFIELD DEVELOPMENT, INC.
D/B/A FAIRFIELD DEVELOPMENT LP and
AXIS SURPLUS INSURANCE COMPANY,

       Plaintiffs,

   v.

J.D.I. CONTRACTOR & SUPPLY, INC.,

       Defendant.

---

### ORDER RE PLAINTIFFS' MOTION TO AMEND AND SUBSTITUTE (DOC. 161), DEFENDANT'S MOTION FOR RELIEF FROM STIPULATION (DOC. 160), AND DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS, OR IN THE ALTERNATIVE, SUMMARY JUDGMENT (DOC. 159)

---

This matter comes before the court on (1) the motion of plaintiffs Fairfield Development, Inc. d/b/a Fairfield Development LP  ("Development") and Axis Surplus Insurance Company ("Axis") (together, "Plaintiffs") to amend the Amended Complaint to remove Development as a party plaintiff and substitute Fairfield Dry Creek Village LP ("Dry Creek") (Doc. 161); (2) Defendant J.D.I. Contractor & Supply, Inc.'s ("JDI's") Motion for Relief from Stipulation (Doc. 160); and (3) JDI's Motion for Judgment on the Pleadings, or in the Alternative, Summary Judgment (Doc. 159).  For the reasons discussed below, the court GRANTS Plaintiffs' Motion to Amend and Substitute, GRANTS JDI's Motion for Relief from Stipulation, and DENIES JDI's Motion for Judgment on the Pleadings, or in the Alternative, Summary Judgment.

## I. Background

The following facts are undisputed: Development was the general contractor of an apartment complex development being constructed on Dry Creek Road in Englewood, Colorado. JDI was the drywall subcontractor on the project.  On January 13, 2008, a fire broke out on the third floor of Building Six of the complex.  JDI personnel had been working on the third floor of Building Six earlier in the day.  The fire caused damage to the development.

Development and its putative property insurer, Axis, brought this action against JDI, alleging negligence and breach of contract.[1]  Plaintiffs allege that JDI personnel were the only individuals in Building Six on the day of the fire and that they moved a portable propane heater too close to combustible materials, which caused the fire.  JDI denies Plaintiffs' claims and asserts the affirmative defenses of (1) comparative negligence (negligence per se), (2) comparative negligence (negligence of standard of care), (3) assumption of risk, and (4) comparative negligence of designated non-parties.  JDI generally denies that its personnel moved the heaters, and contends that when its personnel arrived at the site on the day of the fire, several propane heaters had already been turned on in the middle of the hallway on the third floor of Building Six.  JDI also alleges that the fire could have been caused by other work crews on site or by a propane leak from the connection between the propane tank and the heating unit.

---

[1] Axis originally was not a party to this action.  On July 24, 2009, Development moved to amend its complaint to add Axis as a real party in interest under Rule 17(a) of the Federal Rules of Civil Procedure, and on July 27, 2009, Axis filed a motion to intervene to assert a subrogation interest under Rule 24(a) of the Federal Rules of Civil Procedure.  The district court granted these motions on July 30, 2009, and on March 8, 2010, clarified certain procedural issues by deeming Axis to be a party-plaintiff only, with Fairfield's Amended Complaint (Doc. 60) as the operative pleading in the case.

On April 6, 2010, after the close of discovery, the court held a pretrial conference, at which the parties stipulated that Plaintiffs suffered total damages in the amount of $1,750,000. The court set a trial date of December 6, 2010.  On December 1, 2010, the court held a Final Pretrial Conference, at which counsel for Plaintiffs informed the court that it had discovered, through discussions with its client, that the owner of the property destroyed by the fire was not Development, but rather another Fairfield entity, now identified as Dry Creek.[2]  Following discussion among the parties and the court on how to proceed, this court ultimately vacated the trial date and set forth a briefing schedule for the motions now before it.

## II.  Analysis

### A.    Plaintiffs' Motion to Amend the Amended Complaint to Remove Development and Substitute Dry Creek

"Motions to add or substitute parties are considered motions to amend and therefore must comply with Rule 15(a)."  United States ex rel. Ritchie v. Lockheed Martin Corp., 558 F.3d 1161, 1166 (10th Cir. 2009).  Federal Rule of Civil Procedure 15(a) provides that, except for amendment as a matter of course (which is not relevant here), "a party may amend its pleading only with the opposing party's written consent or the court's leave."  Rule 15(a) also provides that "[t]he court should freely give leave when justice so requires."

"The purpose of [Rule 15(a)] is to provide litigants the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties."  Minter v. Prime Equip. Co., 451 F.3d 1196, 1204 (10th Cir. 2006) (internal quotation marks omitted).  Thus, "district courts may withhold leave to amend only for reasons such as 'undue delay, bad faith or dilatory motive

---

[2] At the Final Pretrial Conference, Plaintiffs identified the proper party as Fairfield Dry Creek Asset LLP, but have now in their motion identified the party as Fairfield Dry Creek Village LP.

on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of [the] amendment.'" Ritchie, 558 F.3d at 1166 (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)); see also Bylin v. Billings, 568 F.3d 1224, 1229 (10th Cir. 2009) ("Rule 15 . . . was designed to facilitate the amendment of pleadings except where prejudice to the opposing party would result." (quoting United States v. Hougham, 364 U.S. 310, 316 (1960))).  "It is settled that the grant of leave to amend the pleadings pursuant to Rule 15(a) is within the discretion of the trial court." Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 330 (1971).

The Tenth Circuit has recognized similar principles under Federal Rule of Civil Procedure 17(a), which relates to substitution of the real party in interest into an action.  Rule 17(a) provides that a court "may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action." Fed. R. Civ. P. 17(a)(3).  "After ratification, joinder, or substitution, the action proceeds as if it had been originally commenced by the real party in interest." Id.  "The purpose of [Rule 17(a)] is to prevent forfeiture when determination of the proper party to sue is difficult or when an understandable mistake has been made." Garcia v. Hall, 624 F.2d 150, 151 n.3 (10th Cir. 1980) (internal quotation marks omitted); see also Esposito v. United States, 368 F.3d 1271, 1278 (10th Cir. 2004) ("Rule 17(a) is designed to prevent forfeitures, and as such must be given broad application.").

In determining whether substitution of the real party in interest should be permitted, the Tenth Circuit "focus[es] primarily on whether the plaintiff engaged in deliberate tactical maneuvering (i.e. whether his mistake was 'honest'), and on whether the defendant was

prejudiced thereby." Esposito, 368 F.3d at 1276.  Where a mistake in naming the correct party is "honest," there is no additional requirement that the mistake also be "understandable." Id. at 1277.

JDI offers two reasons for why leave to amend to substitute Dry Creek should be denied. First, JDI argues that Plaintiffs' last-minute discovery that Development is not the proper party creates an inference that Plaintiffs acted with an improper motive.  Second, JDI argues that it will be prejudiced by the substitution of Dry Creek because this will impair its ability to raise a comparative-negligence defense.  As discussed below, these arguments do not warrant denying Plaintiffs' motion.

> 1.   Improper motive

JDI concedes that it "has no factual basis on which to impugn the motives" of Plaintiffs (Doc. 172 at 2), and that it believes that "Plaintiffs' misrepresentations regarding the owner of the subject property were based on negligence and were not made with an intent to deceive." (Doc. 168 at 5; see also Doc. 160 at 3 ("Defendant JDI has no basis to suggest that the Plaintiffs' misrepresentation regarding the identity of the proper entity as plaintiff was based on anything more than carelessness or negligence.").)  Nonetheless, JDI contends that given "the level of sophistication, knowledge, and control" of the Fairfield entities, "it certainly is not 'understandable' that the Fairfield Team would make an 'honest mistake' so as to name the wrong plaintiff in such a substantial case.  More realistically, the central decision-makers at Fairfield should be attributed with deliberate carelessness and convenient tactical maneuvering."  (Doc. 172 at 7.)

However, it is not clear what "tactical maneuvering" Plaintiffs sought to accomplish by initially designating Development as a plaintiff in this action. Indeed, if anything, Plaintiffs' conduct appears to have exposed them to potential detriment. For example, when this issue was first raised at the Final Pretrial Conference, Plaintiffs offered to remove Development from the action and relinquish their claim for the insured's share of losses. Their mistake also has subjected them to the possibility of judgment on the pleadings. Under these circumstances, it can hardly be said that Plaintiffs had an "improper motive" to seek some tactical advantage. In short, as JDI concedes, the court finds no evidence that Plaintiffs' mistake was anything other than an "honest" one. Their mistake being honest, Plaintiffs do not have to further show that their mistake was "understandable." Esposito, 368 F.3d at 1277.

2.      Prejudice to JDI

JDI's claim of prejudice relates to its comparative-negligence defense. Under Colorado law, a defendant's share of liability may be reduced in proportion to the amount of negligence attributable to "the person for whose injury, damage, or death recovery is made," and if "said proportion is equal to or greater than the negligence of the person against whom recovery is sought, then, in such event, the court shall enter a judgment for the defendant." Colo. Rev. Stat. § 13-21-111(3). One of JDI's defenses in this litigation is that Development, as the general contractor on the project, was negligent and that this negligence caused the fire. And, indeed, this court previously granted in part JDI's motion for summary judgment on the defense of negligence per se, based on a citation issued to Development by the South Metro Fire District

following the fire.[3] JDI therefore argues that removing Development as a plaintiff will strip JDI of the possibility—should the jury apportion fault to Development in a proportion equal to or greater than JDI's share of fault—that Plaintiffs will be completely barred from recovery under section 13-21-111(3).

JDI's claim of prejudice fails. When considering a motion to amend under Rule 15(a), "[c]ourts typically find prejudice only when the amendment unfairly affects the defendants in terms of preparing their defense to the amendment." Minter, 451 F.3d at 1208 (internal quotation marks omitted). "Most often, this occurs when the amended claims arise out of a subject matter different from what was set forth in the complaint and raise significant new factual issues." Id.; see also Childers v. Indep. Sch. Dist. No. 1, 676 F.2d 1338, 1343 (10th Cir. 1982) (finding that the district court's refusal to grant leave to amend was "particularly egregious" because "the subject matter of the amendment was already alleged in the complaint").

Thus, in Minter, the Tenth Circuit rejected a defendant's argument that the addition of a new products-liability claim would result in prejudice where the plaintiff had previously asserted a negligence claim, because "[w]hile the two claims are different in form, there is a significant overlap in the factual underpinnings and defenses." 451 F.3d at 1208. Indeed, the court found that leave to amend was warranted even though the defendant could no longer assert a comparative-negligence defense to the amended claim. Id. at 1208-09; see also Patton v. Guyer, 443 F.2d 79, 86 (10th Cir. 1971) (finding that although "[t]here was practical prejudice . . . arising from the fact that damages were awarded on the amended count," and "[h]ad there been

---

[3] This court concluded, however, that "JDI's defense of comparative negligence, to the extent it is premised on an assertion of negligence per se, will nevertheless require additional proof that the cited violation proximately caused [Development's] injury before that defense will be presented to the jury." (Doc. 89 at 13.)

no amendment the defendants might have prevailed," amendment was nonetheless proper because the defendants "were not prejudiced in terms of preparing their defense to the amendment").

Similarly, the Tenth Circuit has found no prejudice in substituting a plaintiff under Rule 17 where the defendants had notice of "the persons and the issues involved." Garcia, 624 F.2d at 151; see also FDIC v. Isham, 777 F. Supp. 828, 830 (D. Colo. 1991) (finding no prejudice to defendants where "[t]he mere change of plaintiff from FDIC-Receiver to FDIC-Corporate does not change the nature of those claims, nor does it inject any new elements into this action").

Here, Plaintiffs' proposed amendment would not unfairly affect JDI's defense.  The amendment merely substitutes parties, without any change to the underlying facts, subject matter, or claims—other than Plaintiffs' dismissal of their breach-of-contract claim, which benefits JDI.  Moreover, JDI will still be able to attribute liability to Development as a non-party under Colo. Rev. Stat. § 13-21-111.5.  Although JDI now may not be able to completely bar Plaintiffs' recovery under a comparative-negligence defense, "[t]his is not the test." Patton, 443 F.2d at 86.  Rather, JDI will not be prejudiced in terms of preparing its defense to the amendment, and so there is no basis to deny leave to amend.[4]

3.    Discovery

JDI argues that because it has not been afforded any opportunity to conduct discovery with respect to Dry Creek, "[i]n fairness and equity, the requested amendment to substitute could

_____

[4] Indeed, the alternative requested by JDI—judgment on the pleadings—would result in the complete forfeiture of Plaintiffs' claims based on what this court finds to be an honest mistake.  Rules 15 and 17 do not countenance so harsh a result.  See Minter, 451 F.3d at 1204 ("The purpose of [Rule 15(a)] is to provide litigants the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties.") Esposito, 368 F.3d at 1278 ("Rule 17(a) is designed to prevent forfeitures, and as such must be given broad application.").

only be granted if discovery were re-opened so that JDI could seek documents and testimony from [Dry Creek] that might support additional defenses on behalf of JDI." (Doc. 172 at 2.)  JDI alleges that not all relevant documents have been produced; specifically, JDI asserts that Plaintiffs have not yet provided the exhibits to the "Prime Contract" between Dry Creek and Development (as general contractor), nor have they provided Development's liability insurance policy.  JDI further asserts that it should be allowed further discovery with respect to Development's employees because Plaintiffs' counsel asserted the attorney-client privilege at these employees' depositions, and "it [now] has been disclosed that they are employees of a third party to whom the attorney-client privilege does not attach."  (Doc. 172 at 9.)

The court agrees that fairness dictates that JDI be permitted limited discovery concerning Dry Creek.  However, the court finds JDI's specific arguments in its brief unconvincing.  First, JDI does not explain why documents such as Development's liability insurance policy are relevant to this action where there are no claims against Development.  Second, JDI's privilege argument is meritless, as Development's status as a party or non-party does not alter the ability of its employees to assert the attorney-client privilege where applicable.  Moreover, in the court's order setting the briefing schedule for Plaintiffs' motion, the court stated that "JDI may also set forth in its response brief what additional discovery, if any, it requests should Plaintiffs' motion to amend be granted." (Doc. 155 at 2.)  However, other than the documents referenced above, JDI did not specifically indicate what additional discovery it needs.  Nonetheless, the court will allow JDI to seek discovery <u>limited to</u> Dry Creek's alleged ownership of the damaged property, the damages Dry Creek allegedly sustained, and Axis's payments with respect to Dry Creek's losses, as set forth in the court's order under Part III, below.

9

**B.**     **JDI's Motion for Relief from Stipulation**

"Stipulations cannot be disregarded or set aside at will.  Stipulations, however, are not absolute and will be set aside to prevent manifest injustice."  Morrison Knudsen Corp. v. Ground Improvement Techniques, Inc., 532 F.3d 1063, 1075 (10th Cir. 2008) (internal quotation marks omitted).  "The district court has broad discretion to determine whether a party should be held to a stipulation or whether justice requires the stipulation be set aside."  Id.

JDI argues that it would be manifestly unjust to hold it to the stipulation because the stipulation "amounts to a fundamental misstatement of fact."  (Doc. 168 at 5-6.)  Specifically, JDI contends that it entered into the stipulation based on Plaintiffs' representations that Development was the owner of the property and that Development sustained the loss from the fire, which were false.  JDI further contends that "Axis must be held to strict proof of its damages and JDI should be afforded further discovery as to the witnesses and exhibits to be presented."  (Id. at 6-7.)

Plaintiffs, however, contend that at the time the parties entered into the stipulation, discovery had ended, and while JDI had reviewed documents supporting Plaintiffs' damages claim, JDI had propounded absolutely no discovery on damages.  Plaintiffs contend that they were prepared to prove damages of $1,830,024, but that the parties stipulated to the lesser amount for mutual benefit: Plaintiffs would not have to prove damages and JDI would be not be potentially liable for pre-judgment interest.

Under these circumstances, it is unclear why Plaintiffs' representation that Axis paid Development, as opposed to Dry Creek, was material to JDI's decision to enter into the stipulation.  However, the court credits JDI's assertion that "Plaintiffs' recent conduct . . . has

10

caused JDI to question the foundation of Plaintiffs' claims and suggested that JDI should look more closely at the damages."  (Doc. 174 at 2.)  The court finds that it would be manifestly unjust to hold JDI to the stipulation without affording JDI an opportunity to confirm Plaintiffs' new representations concerning damages.  Accordingly, the court will grant JDI's motion, and as discussed above will allow JDI limited discovery into Dry Creek's putative damages.  However, should the parties wish to re-enter the stipulation or enter into a stipulation with different terms following JDI's discovery, the court will entertain such a request.

**C.      JDI's Motion for Judgment on the Pleadings**

JDI argues that judgment on the pleadings, or in the alternative summary judgment, is appropriate because neither Development nor Axis can prove the allegations in their complaint. With respect to Development, JDI asserts that it is not the real party in interest, and that substitution of Dry Creek should not be permitted.  However, as discussed above, the court concludes that leave to amend is appropriate, which cures the real-party-in-interest problem raised by JDI.

JDI argues that even if substitution is permitted, Dry Creek cannot establish that it suffered any damages because "[t]he sole evidentiary basis presented in support of Plaintiff[s'] damages claim is the stipulation," which JDI argues should be set aside.  (Doc. 159 at 5-6.) Once the stipulation is set aside, JDI contends, Dry Creek cannot offer any evidence of damages because "it would be improper to allow a new plaintiff and Axis to amend the Pretrial Order to add exhibits and witnesses to support damages claims, when all such designations were due more than six months ago."  (Id. at 6.)  This argument is unconvincing because it is JDI that is seeking to set aside the stipulation and reopen this issue.  Once this issue is reopened, JDI will be allowed

to conduct discovery as to Dry Creek's damages.  After discovery, the parties will be allowed to amend their exhibit and witness lists to address Dry Creek's damages, if necessary.  However, JDI cannot use its request for relief from the stipulation to support a judgment on the pleadings in its favor.

With respect to Axis, JDI asserts that Axis has no subrogation claim because stepping into the shoes of Development gives it no rights, as Development incurred no damages.  JDI also reasserts the argument that Axis cannot prove its damages because its only evidence of damages is the stipulation, which should be set aside.  However, the first issue raised by JDI will be cured by the substitution of Dry Creek as the real party in interest.  And, as discussed above, the court will grant relief from the stipulation but allow JDI discovery into Dry Creek's damages and Axis's payment with respect thereto, which forecloses JDI's second argument.

### III.  Conclusion

The court therefore ORDERS as follows:

1.      Plaintiffs' Motion to Amend and Substitute (Doc. 161) is GRANTED.  Plaintiffs shall, by March 28, 2011, file a Second Amended Complaint removing Development as plaintiff; adding Dry Creek as plaintiff; dismissing the breach-of-contract claim and deleting all allegations related thereto; and correcting all references to Development so that such references refer to Dry Creek, as necessary.  Plaintiffs shall not make any other amendments to the amended complaint.

2.      JDI's Motion for Relief from Stipulation (Doc. 160) is GRANTED.

3.      JDI's Motion for Judgment on the Pleadings, or, in the Alternative, Summary Judgment (Doc. 159), is DENIED.

4.      JDI may, by April 4, 2011, propound discovery (including written discovery and deposition notices) on plaintiffs Axis and Dry Creek, limited to the issues of Dry Creek's putative ownership of, or interest in, the development, Dry Creek's alleged damages, and Axis's alleged payment(s) to Dry Creek pursuant to insurance claims arising from the fire.  Plaintiffs Axis and Dry Creek shall respond to such discovery requests in an expedited fashion, and in good faith make available witnesses for depositions to the extent possible, by April 25, 2011.

5.      All discovery shall conclude by May 2, 2011, and any motions pertaining to alleged inadequate discovery shall be made by May 6, 2011.  Should the magistrate judge grant relief on any such motions, the magistrate judge shall set the time limits to complete any further discovery that may be ordered.

6.      JDI may file, no later than May 16, 2011, a new designation of non-parties pursuant to Colo. Rev. Stat. § 13-21-111.5, to include Development.

7.      No later than June 13, 2011, the parties shall file a proposed Stipulated Final Pretrial Order.  This Stipulated Final Pretrial Order shall not reflect any changes from the existing Revised Final Joint Pretrial Order (Doc. 99) other than changes related to damages or changes necessary to reflect the substitution of Dry Creek for Development.

8.      Plaintiffs' Motion to Set Trial Date (Doc. 176) is DENIED.

9.      The Final Trial Preparation Conference is set for July 13, 2011, at 10:00 a.m.

10.      Trial in this matter is set to begin on July 18, 2011 at 8:30 a.m., and shall proceed through July 22, 2011.

Dated this <u>    18th   </u> day of <u>        March        </u>, 2011.


BY THE COURT:

*s/ David M. Ebel*

_____

U. S. CIRCUIT COURT JUDGE